J-A28004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.T.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| J.N., III | : | |
| | : | |
| Appellee | : | No. 1426 EDA 2017 |

Appeal from the Order Dated March 21, 2017
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 2011-00392,
PACSES No. 091112286

| | | |
|---|---|---|
| S.T.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| J.N., III | : | |
| | : | |
| Appellant | : | No. 1487 EDA 2017 |

Appeal from the Order Entered March 21, 2017
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 2011-00392,
PACSES NO: 091112286

BEFORE: GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED APRIL 06, 2018**

Appellant, S.T.M. ("Mother"), and Cross-Appellant, J.N., III ("Father"), appeal and cross-appeal from the order entered in the Delaware County Court of Common Pleas, which modified Father's child support obligations. We affirm.

In its opinion, the trial court fully and accurately sets for the relevant

facts and procedural history. Therefore, we have no need to repeat them. We add certain observations from the record. The parties have been locked in ongoing disputes over child support arrears, invoking judicial resources time and again. The current feud stems from Father's petition to modify the amount of child support arrears in a March 18, 2015 support order and Father's challenge to increased tuition costs for the parties' middle child, A.N., to attend a new high school. After two days of hearings, the trial court entered on March 21, 2017, a support order reducing the amount of Father's child support arrears and requiring Father to contribute to A.N.'s tuition. Mother filed a timely notice of appeal, and Father filed a timely notice of cross-appeal. The court ordered the parties to file respective concise statements of errors complained of on appeal per Pa.R.A.P. 1925(b); the parties complied.

At No. 1426 EDA 2017, Mother raises the following issues for our review:

> DID THE TRIAL COURT ABUSE ITS DISCRETION BY REDUCING THE CHILD SUPPORT ARREARS OF [FATHER], BY A TOTAL OF $16,989.23 CONTRARY TO THE APPLICABLE LAW, EVIDENCE WITHIN THE RECORD AND ESTABLISHED POLICIES OF THE DELAWARE COUNTY DOMESTIC RELATIONS OFFICE?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION BY ORDERING FATHER TO CONTRIBUTE TO [A.N.]'S PRIVATE SCHOOL TUITION WHERE FATHER AGREED THAT [A.N.] COULD AND SHOULD ATTEND PRIVATE SCHOOL, [A.N.] HISTORICALLY ATTENDED PRIVATE SCHOOL, AND FATHER COULD AFFORD TO CONTRIBUTE TO PRIVATE SCHOOL COSTS?

(Mother's Brief at 11).

At No. 1487 EDA 2017, Father raises the following issue for our review:

> WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY MODIFYING FATHER'S CHILD SUPPORT OBLIGATION TO INCLUDE THE TUITION OF A NEW AND SIGNIFICANTLY HIGHER PRIVATE SCHOOL [TUITION], WHERE THE SAME WAS NOT REASONABLE AS: (1) FATHER WAS ALREADY PAYING FOR PRIVATE SCHOOL TUITION FOR THE SCHOOL THAT [A.N.] CONSISTENTLY ATTENDED SINCE KINDERGARTEN AND WAS ABLE TO CONTINUE ATTENDING; AND/OR (2) THE COST OF THE NEW SCHOOL'S TUITION WAS NOT REASONABLE IN LIGHT OF THE PARTIES' INCOME AS WELL AS FATHER'S SIGNIFICANT DECREASE IN INCOME; AND/OR (3) MOTHER WAS SEEKING THE CHANGE TO THE NEW SCHOOL BUT FAILED TO MEET HER BURDEN TO SHOW A BENEFIT TO [A.N.]; AND/OR (4) MOTHER UNILATERALLY ENROLLED [A.N.] OVER FATHER'S OBJECTION AND IN VIOLATION OF JOINT LEGAL CUSTODY[?]

(Father's Brief at 1-2).

Our standard review of child support orders is well settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Krebs v. Krebs*, 944 A.2d 768, 772 (Pa.Super. 2008) (quoting *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Dominic F. Pileggi, we conclude the parties' issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed June 22, 2017, at 17-36) (finding: **(Mother's Issue 1)** structure of arrears determination in March 18, 2015 support order demonstrates court did not intend to set arrears at $15,235.52 or any "sum certain"; rather, court intended Domestic Relations Office to recalculate Father's arrears, based on retroactive support amounts contained in March 2015 support order, status of previous arrears at time of order, and Father's payments under terms of any previous support obligation; sum of $15,235.52 represents amount March 2015 order required Father to make in initial lump sum payment toward overall support arrears; further, this Court previously held lump sum payment of $15,235.52 was not "sum certain"; based on foregoing, handwritten reference in March 2015 support order to $31,566.52 in arrears is also not "sum certain"; **(Mother's Issue 2/Father's Issue)** both parties testified quality of Children's education is very important; evidence demonstrated parties recognized A.N.'s previous high school was substandard; before Mother enrolled A.N. in another school, Father was aware A.N. had taken

- 4 -

entrance exam for different school and bought A.N. study guide book; in email to Mother, Father indicated he did not oppose sending A.N. to different high school and noted quality and costs associated with potential new school were important to Father; Father, however, did not participate in search for new school; subsequently, Father failed to challenge Mother's placement of A.N. in new high school for several months; during search for new school and after A.N.'s enrollment in new school, Father failed to exercise his rights as shared legal custodian of A.N.; based on foregoing, Father's argument that he did not consent to Mother enrolling A.N. in new high school fails; regarding increased tuition associated with A.N.'s new school, Father's earnings amounts to $210,000.00 per year; Father's total monthly support obligation, including tuition, is $3,682.91, approximately 32% of Father's net monthly income; in light of Father's income, cost of A.N. attending new school, and benefit to A.N. in attending new school, increase in Father's contribution to tuition is reasonable).  The record supports the trial court's rationale, and we see no reason to disturb it.  Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/6/18

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CIVIL ACTION - LAW

*S. T. M.*

**Plaintiff/Appellant/Cross Appellee**

**C.C.P. NO. 2011-000392**
**PACSES NO. 091112286**

**Superior Court No.: 1487 EDA 2017**

**vs.**

*J. N.*

**Defendant/Appellee/Cross Appellant**

**IN SUPPORT**

Ann M. Funge, Esquire, Attorney for Plaintiff/Appellant/Cross Appellee
1801 Market Street, Suite 1845, Philadelphia, PA 19103
Aimee M. Taylor, Esquire, Attorney for Defendant/Appellee/Cross Appellant
339 West State Street, Media, PA 19063

## OPINION

PILEGGI, J.                                                    DATE: June 22, 2017

This Appeal is considered a direct appeal, and cross appeal, from this

Court's March 21, 2017 Support Order[1]. Appellant/Cross Appellee is Plaintiff,

*S. T. M.*        ("Mother"). Appellee/Cross Appellant is Defendant,    *J. N.*

("Father"). Mother and Father seek review of this Court's March 21, 2017 Support

Order, which provided for an order of child support payable by Father to Mother,

on behalf of two (2) minor children, J.N. and A.N. ("the children"). On appeal,

Mother raises the following issues:

1.    Did this Court err in finding that Father's income for 2017 is only
      comprised of his base salary of Two Hundred Ten Thousand Dollars
      ($210,000.00) and is not comprised of any "bonus" income?

---

[1] On March 21, 2017, this Court contemporaneously filed Findings of Fact and Conclusions of Law in support of its Support Order.

2.      Did this Court err in its interpretation its prior Support Order of March 17, 2015 with respect to the determination of total arrears owed as of March 17, 2015?

Defendant/Appellee/Cross Appellant Father filed a cross appeal of this Court's March 21, 2017 Support Order. In his cross appeal Father raises the following issue:

1.      Did this Court err in finding that Father is responsible for contribution towards the child A.N.'s private school tuition, with respect to the child's enrollment at the Country Day School of The Sacred Heart?

## PROCEDURAL HISTORY

On or about March 18, 2016, Father filed a Petition to Modify Support in the Pennsylvania Court of Common Pleas of Delaware County, Office of Domestic Relations. This Court held a hearing, which commenced on January 4, 2017, continued to a second day, and concluded on January 9, 2017.

On March 21, 2017 a Support Order was entered by this Court. This Court's Support Order contained, *inter alia*, the following obligations for support, payable from Father to Mother on a monthly basis:

1. Effective March 18, 2016 to September 1, 2016: Four Thousand Sixty-One Dollars and Thirty Cents ($4,061.30) per month. (*See 3/21/17 Support Order,* at ¶ 135).

2. <u>Effective September 1, 2016 to December 31, 2016</u>: Four Thousand Eight Hundred Seventy-Four Dollars and Seventy-Four Cents ($4,874.74) per month. (*See Id.* at ¶ 136).

3. <u>Effective January 1, 2017</u>: Three Thousand Six Hundred Eighty-Two Dollars and Ninety-One Cents ($3,682.91) per month. (*See Id.* at ¶ 137).

4. <u>Credit to Arrears</u>: **Following** the recalculation of arrears in accordance with the bifurcated order contained herein, Delaware County Domestic Relations is ordered to **CREDIT** Defendant in the amount of Fifteen Thousand Two Hundred Thirty-Five Dollars and Fifty-Two Cents ($15,235.52). In addition, Domestic Relations shall **CREDIT** Defendant another One thousand Seven Hundred Fifty-Four Dollars and Eleven Cents ($1,754.11) in accordance with Paragraphs 123-134 above.[2] **Therefore a total of Sixteen Thousand Nine Hundred Eighty-Nine Dollars and Sixty-Three Cents ($16,989.63) shall be credited to Father's arrears.** This amount shall be applied so as to reverse the added arrears applied by Domestic Relations on October 21 and October 22, 2015, in accordance with its second interpretation of Judge Coll's March 17, 2015 Order, an interpretation which this Court finds to be erroneous. (Emphasis in Original) (*See Id.* at ¶ 140).

---

[2] In paragraphs 123-134 of its March 21, 2017 Support Order, this Court explained its rationale for its interpretation of the March 17, 2015 Support Order. (*See 3/21/17 Support Order* at ¶ 123-134).

On April 20, 2017 Mother filed a Notice of Appeal. On May 2, 2017, this Court ordered Mother to provide a Concise Statement of Matters Complained of on Appeal pursuant to *Pa. R.A.P. 1925(b)*. On May 3, 2017, Father filed a Notice of Cross Appeal. On May 10, 2017, this Court ordered Father to provide a Concise Statement of Matters Complained on appeal pursuant to *Pa. R.A.P. 1925(b)*. On May 23, 2017, Mother filed a Concise Statement of Matters Complained of on Appeal. On May 31, 2017, Father filed a Concise Statement of Matters Complained of on Appeal.

## FACTS

Appellant/Cross Appellee is ⋅ *S. T. M.* ⋅ ("Mother") who resides at 2922 Copper Beech Lane, Secane, Upper Darby Township, Delaware County, PA 19018. *See Ex. P-1*. Mother graduated from Wharton School of Business in 2000 with her degree in Business Management. *N.T. 1/4/17,* at 139 ¶ 2-18. After she met and married Father, she was a stay at home mom for three (3) or four (4) years and then worked part time as a tax preparer. *Id.* at 139 ¶ 2-18. In 2009 she attended Temple University Law School and earned her Juris Doctorate in 2013. *Id.* Mother currently assists individuals in filing their federal and state tax returns. In her tax preparation practice, Mother has approximately one hundred and fifty (150) to two hundred (200) clients. *Id.* at 139-140. Mother is also the principal owner of a law practice. In connection with her law practice, Mother represents clients, mainly in the areas of tax and estate law. *Id.* at 140-143.

Mother's income proved to be a difficult fact to ascertain, mainly due to her contradictory and inconsistent testimony. Had Mother's background not consisted of an Ivy League education and her employment experience not consisted of managing her own law practice as well as her own tax preparation practice, this Court may attribute Mother's poor credibility to being ill-prepared and inept. However, given Mother's perceived intelligence and her keen ability to effectively cross examine Father with respect to his income and assets, this Court, in its Findings of Fact and Conclusions of Law filed contemporaneously with its Support Order of March 21, 2017, characterized Mother's credibility, with respect to her income, as "at best, cagey and evasive." *See 3/21/17 Support Order,* at ¶ 89. This Court highlights Mother's lack of credibility with respect to her income as follows:

Mother at first testified that she did not know her earnings for 2016 and did not bring any income information or any other documentation reflective of her income to Court on the day of the hearing, a fact for which she attempted to blame Father's attorney due to a failure of Father's attorney to "request discovery." *N.T. 1/4/17,* at 92-96. However, she was then presented with this Court's Order of December 9, 2016, which had scheduled the hearing on the matter. Father's counsel reviewed this Court's December 9, 2016 Order with Mother, which stated in relevant part, "at this hearing all parties must be present and prepared to present testimony and/or documents and argument." *Id.* at 96 ¶ 5-10.

Mother then attempted to evade questions posed by Father's counsel and stated that "according to the support order," she was assessed an income of One Thousand Five Hundred Dollars ($1,500.00) per month, which Mother agreed is equivalent to Eighteen Thousand Dollars ($18,000.00) per year. *Id.* at 98-99. Before that, Mother had testified that her income was approximately Two Thousand and Fifty Seven Dollars ($2,057.00) per month. *Id.* at 97 ¶ 19-24. Mother testified that she recently purchased a new home. *Id.* at 100 ¶ 4-6. Mother was presented with a loan application that she had completed in order to finance the purchase of a new home in 2015. Mother indicated on the loan application document that her monthly income was Three Thousand Five Hundred Thirty Eight Dollars ($3,538.00) per month. *Id.* at 101 ¶ 6-15; *See Ex. D-6.* Mother testified that she owns another piece of real property. She stated that she applied for a loan to refinance that property on June 10, 2015. Mother stated that on her application, she represented her annual salary to be Forty Four Thousand Dollars ($44,000.00). *Id.* at 102 ¶ 8-19; *Ex. D-7.* Mother further stated that this amount was her gross pay prior to payment of taxes. *N.T. 1/4/17,* at 109 ¶ 6-15. After testifying that she did not have any documentation representative of her income, Mother testified that she actually brought her 2015 tax returns to court. *Id.* at 112-113; *Ex. P-1.*

Appellee/Cross Appellant is   *J. N.*   ("Father") who resides in the City of Atlanta, Fulton County, Georgia. *N.T. 1/4/17,* at 15 ¶ 11-15. Father holds a Bachelor's Degree in Economics from the University of Pennsylvania and a Master's

of Business Administration from The University of Pennsylvania, Wharton School. *Id.* at 77-78. Father is currently employed with Herndon Capital Management ("Herndon"), with a base salary of Two Hundred Ten Thousand Dollars ($210,000.00). *Id.* at 15-16. In previous years, Father also received an annual bonus. However, that bonus is not guaranteed. It is based on the previous year's productivity and resulting revenue generated by Herndon. *See Id.* at 16-22; 52.

Father testified that he began employment with Herndon in June of 2011. *Id.* at 15 ¶ 19-21. When he was hired in 2011, his title was Senior Investment Analyst. Since 2011 he has been promoted three (3) or four (4) times, with the most recent promotion being in January of 2016. *Id.* at 47-48. His current title is Deputy Chief Investment Officer. *Id.* Father's yearly income for 2014 was over Five Hundred Thousand Dollars ($500,000.00). *Id.* at 73. Father's yearly income for 2015 was approximately Four Hundred Fifty Thousand Dollars ($450,000.00). *Id.* Father's yearly income for 2016 was approximately Three Hundred Seventy Eight Thousand Dollars ($378,000.00). *Id.; Ex. D-1.* Father testified that his income for 2017 will only consist of his base salary of Two Hundred Ten Thousand Dollars ($210,000.00). Father testified that he will not receive a bonus in 2017. *Id.* at 18-21.

With respect to his assets and expenses, Father purchased a new property two and a half (2½) years ago. The purchase price of the property was Four Hundred Thousand Dollars ($400,000.00). *Id.* at 49 ¶ 1-13. Father testified that

over the course of the last year and a half, a home has been being constructed, and that "the final mortgage amount may be Six Hundred Forty Thousand Dollars ($640,000.00)." *Id.* at 49 ¶ 17-19. Father testified that his housing expenses are greater now than they were before the purchase of the new home. *Id.* at 51 ¶ 21-22.

Father and Mother are the parents of two (2) minor children, A.N., aged fifteen (15) at the time of the hearing, and J.N., aged thirteen (13) at the time of the hearing ("the children"). *Id.* at 25 ¶ 1-4. The parties are also the parents of one (1) emancipated child. *Id.* at 86-87. The child J.N. is in seventh grade. J.N. attends a private school in Philadelphia known as The City School. He has attended The City School since kindergarten. *Id.* at 25 ¶ 7-10.

The child A.N. attended The City School from kindergarten through eighth grade. *Id.* at 25 ¶ 18-19. As of the date of the hearing, A.N. is in the ninth grade. A.N. entered the ninth grade at the commencement of the 2016-17 school year. At the commencement of the 2016-17 school year, A.N. began attending The Country Day School of the Sacred Heart ("Sacred Heart"). *See Id.* at 25 ¶ 11-16. According to Father, the reason A.N. attends Sacred Heart instead of The City School is because Mother unilaterally removed A.N. from The City School and enrolled her in Sacred Heart. Father claimed that this was done without his knowledge or consent. *Id.* at 25 ¶ 5-24. Despite the parties sharing joint legal

custody of the children, Father stated that he was unaware of Mother's unilateral decision to enroll A.N. in Sacred Heart. *Id.* at 25-34.

A.N.'s removal from The City School after the conclusion of her eighth grade school year and subsequent enrollment into Sacred Heart gave rise to a dispute concerning Father's obligation to contribute to Sacred Heart's tuition payments. Mother asserted, and Father contested, that he was responsible for any of Sacred Heart's tuition. Tuition for attendance at Sacred Heart is higher than tuition for The City School. Father and Mother agreed that the tuition for The City School is Eight Thousand Four Hundred Seventy Dollars ($8,470.00) per child. *Id.* at 37 ¶ 20-24; *Ex. D-4.* If both children were enrolled in The City School for the school year of 2016-17, the total tuition would have been Fifteen Thousand Nine Hundred Forty Dollars ($15,940.00).[3] *Id.* at 38 ¶ 17-21; *Ex. D-4.*

The tuition for A.N.'s attendance at Sacred Heart is Eighteen Thousand Six Hundred Eighty-Nine Dollars and Eighty Cents ($18,689.80)[4] per year. *Ex. P-2.* Therefore, the total yearly tuition for both children, with A.N. attending Sacred

---

[3] The tuition amount is Eight Thousand Four Hundred Seventy Dollars ($8,470.00) per child, which for two (2) children would amount to Sixteen Thousand Nine Hundred Forty Dollars ($16,940.00). However, there is a One Thousand Dollar ($1,000.00) discount for having two (2) children enrolled in The City School. Therefore, the total amount for tuition for both A.N. and J.N. amounts to Fifteen Thousand Nine Hundred Forty Dollars ($15,940.00). *N.T. 1/4/17,* at 41 ¶ 21-25; *Ex. D-4.*

[4] Mother had testified that A.N.'s tuition for Sacred Heart is Eighteen Thousand Eight Hundred Eighty Five Dollars ($18,885.00). *Id.* at 147 ¶ 1-16. On January 9, 2017, when the parties reappeared to conclude the proceeding, Mother brought an invoice for Sacred Heart tuition, and corrected her prior testimony. Mother stated that the tuition "was actually a few hundred dollars less" than what she had previously stated. *N.T. 1/9/17,* at 10 ¶ 14-19. The tuition statement was introduced as Ex. P-2 and indicated that the total tuition is Eighteen Thousand Six Hundred Eighty-Nine Dollars and Eighty Cents ($18,689.80). *Ex. P-2.*

Heart, and J.N. attending The City School, is Twenty-Seven Thousand One Hundred

Fifty-Nine Dollars and Eighty Cents ($27,159.80). *See Ex. D-4; See also Ex. P-2.*

## DISCUSSION – MOTHER'S APPEAL

Mother raises the following issues on appeal:

1. **Did this Court err in finding that Father's yearly income for 2017 was not inclusive of any extra income beyond his base salary of Two Hundred Ten Thousand Dollars ($210,000.00)?**

Mother alleges that this Court erred in concluding that Father's income for

2017 consisted only of his base salary of Two Hundred Ten Thousand Dollars

($210,000.00). Mother alleges that this Court erred in its determination to exclude

extra income from a yearly bonus that Father has received in previous years, based

upon this Court's reliance on Father's testimony as well as documentation from

Father's employer which indicated that he will not be receiving a bonus in 2017. In

her Concise Statement of Matters Complained of on Appeal, Mother alleges that

this Court erred in its reliance upon Father's testimony and its reliance "on a self-

serving letter written by one of Father's peers within his company and which had not

been available on the first day of trial and only was when a second day of trial

became necessary." (See *Mother's Concise Statement of Matters Complained of on

Appeal* at ¶ 2).

Pursuant to *23 Pa. C.S. § 4302* and *Pa. R.C.P. No. 1910.16-2(a)*, income

"includes compensation for services, including, but not limited to, **wages, salaries,**

**bonuses, fees,...**and any form of payment due to and collectible by an individual regardless of source." *Id.* (Emphasis added).

The petitioner requesting modification of a support order has the burden of demonstrating a change in circumstances which warrant the requested modification. *See 23 Pa.C.S. § 4352(a).* If the trier of fact finds that there has been a material and substantial change in circumstances, the support order may be increased or decreased depending upon the respective incomes of the parties, consistent with the support guidelines and existing law, and each party's custodial time with the child at the time the modification petition is heard. *See Pa. R.C.P. No. 1910.19(c).* The trial court, in determining whether modification of a child support order is warranted, must consider all pertinent circumstances and base its decision upon facts appearing in the record which indicate that the moving party did or did not meet the burden of proof as to changed conditions. *See Mackay v. Mackay,* 984 A.2d 529 (Pa. Super. Ct. 2009). When the alleged change in circumstances is based upon a reduction of income the Court may not order a reduction unless the petitioner has proved by competent evidence a material and substantial change in his financial circumstances. *See Commonwealth ex rel. Delbaugh v. Delbaugh,* 392 A.2d 717, 718 (Pa. Super. 1978). *See also Shuster v. Shuster,* 323 A.2d 760, 761 (Pa. Super. 1974);

Furthermore, when one party is seeking modification of a support order due to an alleged reduction of income, this Court notes the applicability of the following, pursuant to *Pa. R.C.P. 1910.16-2(d)*:

(d) *Reduced or Fluctuating Income.*

(1) *Voluntary Reduction of Income.* When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

(2) *Involuntary Reduction of, and Fluctuations in, Income.* No adjustments in support payments will be made for normal fluctuations in earnings. **However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control** unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

*Pa. R.C.P. No. 1910.16-2(d)* (Emphasis added).

In determining a child support obligation, the trier of fact is entitled to weigh the evidence presented and assess its credibility. *McClain v. McClain*, 872 A.2d 856, 862 n. 1 (Pa. Super. 2005). The assessment of the credibility of witnesses is

within the sole province of the trial court." *Brotzman-Smith v. Smith,* 650 A.2d 471, 474 (Pa. Super. 1994).

Furthermore, when making its determination with respect to an alleged reduction of income, this Court notes that it must weigh evidence, beyond the Petitioner's actual earnings, to the nature and extent of the Petitioner's property and investments, and to his standard of living, when making a determination as to whether the Petitioner has met his burden to prove a reduction in income. See *Banks v. Banks,* 418 A.2d 1370, 1375 (Pa. Super. 1980)(*citing, Weiser v. Weiser,* 362 A.2d 287 (Pa. Super. 1976) and *Shuster v. Shuster,* 323 A.2d 260 (Pa. Super. 1974)).

This Court carefully weighed the credibility of the evidence and testimony presented during the January 4 and January 9, 2017 hearings on this matter. This Court determined that Father testified credibly with respect to his income. Father's testimony was supported by documentation from his employer, which was admitted into evidence, and which was uncontroverted. In accordance with the testimony and evidence provided, this Court found that Father, as the Petitioner in this matter, met his burden to demonstrate an involuntary reduction in income, which this Court found to be a substantial change in circumstance necessary to warrant modification of his support obligation. Specifically, this Court found that credible evidence and testimony demonstrated the following facts:

a) Father has been employed with Herndon Capital Management ("Herndon") since 2011. When he was hired in 2011, his title was Senior Investment Analyst. Since 2011 he has been promoted three (3) or four (4) times, with the most recent promotion being in January of 2016. His current title is Deputy Chief Investment Officer. *N.T. 1/4/17,* at 47-48.

b) Each year of his employment, Father is paid a base salary plus a bonus, paid in March of each year. Although Father has received a bonus in each year since his employment with Herndon, the bonus is not guaranteed. The amount Father's bonus is based on amount of revenue generated by Herndon from the previous year. For example, Father's bonus of One Hundred Sixty-Eight Thousand One Hundred Thirteen Dollars ($168,113.00) was paid to him in March of 2016. However, it was based on revenue generated by Herndon in 2015. *Id.* at 16-19.

c) Father's yearly income for 2014 was over Five Hundred Thousand Dollars ($500,000.00). *Id.* at 73 ¶ 19-20.

d) Father's yearly income for 2015 was approximately Four Hundred Fifty Thousand Dollars ($450,000.00). *See Id.* at 73 ¶ 10-14.

e) Father's yearly income for 2016 was approximately Three Hundred Seventy Eight Thousand Dollars ($378,000.00). *Id.* at 73 ¶ 15-17).

f) During the year 2016, Herndon experienced "difficult times." The company has laid off approximately half of its employees. During 2016, Herndon

went from approximately fifty (50) employees to approximately twenty-two (22) or twenty-three (23) employees. *Id.* at 18-19.

g) Father has concerns about the security of his job and testified that Herndon is not paying bonuses in an effort to avoid further layoffs. *Id.* at 21-22.

h) Father's income for 2017 will only consist of his base salary of Two Hundred Ten Thousand Dollars ($210,000.00). *Id.* at 19-21; *Ex. D-11.*

i) Documentation, submitted from Father's employer, which was admitted into evidence, verified that Father will not be receiving any additional income beyond his base salary of Two Hundred Ten Thousand Dollars ($210,000.00) "due to the company's financial status." *See Ex. D-11.*

Based on the findings summarized above, this Court concluded that Father had met his burden to demonstrate a change in circumstance, specifically a reduction of income. Furthermore, Father had sufficiently demonstrated that his reduction of income was involuntary and non-fluctuating in accordance with the standards prescribed under *Pa. R.C.P. No. 1910.16-2(d).*

In addition, in evaluating whether Father had met his burden to demonstrate a reduction in income, this Court also considered points raised in Mother's cross-examination regarding changes in Father's expenses and debt burden. See *Banks v. Banks,* 418 A.2d 1370 (Pa. Super. 1980). Specifically this Court considered the following:

a) In 2014, Father purchased a lot in order to build a new home. The cost of that property was Four Hundred Thousand Dollars ($400,000.00). *N.T. 1/4/17*, at 49 ¶ 9-13; *See also 3/21/17 Support Order*, at ¶ 17-20.

b) Over the last year and a half, a home has been built on that property. The final balance of a mortgage that Father has on the property "may be Six Hundred Forty Thousand Dollars ($640,000.00)." *N.T. 1/4/17*, at 49 ¶ 17-19; *See also 3/21/17 Support Order*, at ¶ 17-20.

c) Father's expenses with respect to housing are greater after the purchase of the new home than they were before the purchase of the new home. *Id.* at 51 ¶ 21-22.

d) No evidence indicated that Father's assets, expenses, or standard of living were greater than that which could be sustained by Father's gross income of Two Hundred Ten Thousand Dollars ($210,000.00) per year, which equates to a gross income of Seventeen Thousand Five Hundred Dollars ($17,500.00) per month, which this Court calculated to be Eleven Thousand Five Hundred Forty One Dollars and Forty Cents ($11,541.40) in net monthly income. *See 3/21/17 Support Order*, at ¶ 83.

e) No evidence indicated that Father has any additional assets, the financial maintenance of which requires income greater than the calculated net monthly income of Eleven Thousand Five Hundred Forty One Dollars and Forty Cents ($11,541.40). *See Id.*

f) No evidence indicated that Father has any additional expenses which would exceed the calculated net monthly income of Eleven Thousand Five Hundred Forty One Dollars and Forty Cents ($11,541.40).

Therefore, this Court concluded, that even in light of Mother's cross examination relating to Father's assets, income, standard of living, and expenses, Father had met his burden to show a reduction of income, and that for 2017, his income will be comprised only of his base salary of Two Hundred Ten Thousand Dollars ($210,000.00).

## 2. Did this Court err in its interpretation of the arrears provision of its March 17, 2015 Order?

Mother alleges in her Concise Statement of Matters Complained of on Appeal that this Court erred "by arbitrarily reducing the child support arrears of Defendant...by $16,989.23 contrary to applicable law, evidence within record, and established policies of the Delaware County Domestic Relations Office." (*See Mother's Concise Statement of Matter's Complained of on Appeal*, at ¶ 1).

A trial court is entitled to great deference in the interpretation of its own orders. "Appellate review of a trial court's actions relies heavily upon the sound discretion of the trial judge. Reversal occurs only in the event that a clear abuse of the trial court's discretion is evident." *Commonwealth v. Lebo*, 713 A.2d 1158, 1161-62 (Pa. Super. 1998); (*quoting, Commonwealth v. Restauri*, 664 A.2d 593, 596–97 (Pa. Super. 1995)). This is especially true when an appellate court reviews

a trial court's interpretation of its own orders in an area particularly assigned to the court's discretion. *Commonwealth v. Lebo,* 713 A.2d 1158, 1162 (Pa. Super. 1998) (*citing Equipment Finance, Inc. v. Toth,* 476 A.2d 1366 (Pa. Super. 1984) (explaining the great deference given trial courts in interpretation of their own rules).

With respect to interpretation by the Court of another Judge's Order,[5] the Pennsylvania Superior Court has made it clear that the court is bound by the words of the order itself, supplemented, if at all, only by statements or documents of record at the time the order was made. *Commonwealth ex rel. Brennan v. Brennan,* 195 A.2d 150, 151 (Pa. Super. 1963).

In the instant matter, interpretation of this Court's March 17, 2015 Order of Support ("2015 Support Order")[6] was called into question. The 2015 Support Order provides, *inter alia,* the following relevant provisions:

**Amount of Support:**

1. Effective **January 1, 2012 through to December 31, 2012,** and based upon [Mother's] net monthly income of $2,123 and [Father's] net monthly income of

---

[5] This Court's March 17, 2015 Order of Support was entered by the Honorable Michael F.X. Coll of the Delaware County Court of Common Pleas. This Court's March 21, 2017 Support Order, which contained a provision addressing its interpretation of the March 17, 2015 Order of Support, was entered by the Honorable Dominic F. Pileggi of the Delaware County Court of Common Pleas.

[6] This Court notes that the Prior Support Order was subject to an appeal filed by Mother and a cross appeal filed by Father. The appeal and cross appeal were filed in The Superior Court of Pennsylvania, under the caption *S. T. M. (F/K/A: S. N. ) Appellant, v. J. N. , Appellee, S. T. M. (F/K/A: S. N. Appellee, v. James Nelson, Appellant,* and were docketed in the Superior Court of Pennsylvania, under Docket Numbers 1085 EDA 2015, and 1330 EDA 2015.

$10,421, a monthly order of Support shall be payable by the [Father] to the [Mother] as follows:

**Child Support     $2,116.50**

2. Effective **January 1, 2013 through to December 31, 2013,** and based upon [Mother's] net monthly income of $2,425 and [Father's] net monthly income of $14,362, a monthly Order of Support shall be payable by the [Father] to the [Mother] as follows:

**Child Support     $2,721.57**

3. Effective **January 1, 2014 through to December 31, 2014,** and based upon [Mother's] net monthly income of $2,955 and [Father's] net monthly income of $25,689, a monthly Order of Support shall be payable by the [Father] to the [Mother] as follows:

**Child Support     $3,704.86**

4. Effective January 1, 2015, and based upon [Mother's] net monthly income of $2,955 and [Father's] net monthly income of $25,689, a monthly Order of Support shall be payable by the [Father] to the [Mother] as follows:

a. Child Support (based on [Father's]

Base Salary)                    $1,982.16

b. Child Support (based on [Father's] Bonus; 50% of Difference between the obligation with bonus and the obligation due to base salary only)                    $711.65

| | |
|---|---|
| **Sub-Total Per Month** | **$2,693.81** |

d. Ordered on Arrears (OOA),

| applicable | $269.00 |
|---|---|
| **Total Per Month** | **$2,962.81** |

*(3/17/15 Order of Support,* at 1-2) (Emphasis in Original).

Additional Terms:

1. Tuition – 2012 through 2014/2015 school year. The parties have stipulated that [Father] owes [Mother] the sum of $16,331, representing [Father's] share of the children's tuition (The City School and Church Farm School) from 2012 through the end of the 2014/2015 school year. This sum shall be added to the arrears owed to [Mother]. [Mother] is responsible to ensure that both schools are paid up to and including the 2014/2015 school year.

   *(3/17/15 Order of Support,* at 4 ¶ 1)(Emphasis in Original).

4. Arrears: Due to the retroactive nature of the within Order, as well as the anticipated arrears owed to [Mother] as a result, within thirty (30) days, [Father] shall make a lump sum payment towards the arrears in the amount of $15,235.52. This payment SHALL be made through PACSES.

   *(3/17/15 Order of Support,* at 5 ¶ 4)(Emphasis in Original)

Following the above recited provisions, a handwritten provision is inserted

which reads:

**"Total arrears of support plus tuition are $31,566.52. MFX Coll 3-17-15."**

(*Id.*) (Emphasis added).

Interpretation of the 2015 Support Order, with respect to the amount of

arrears owed by Father to Mother, gave rise to a dispute between the parties. The

dispute concerns two (2) different and conflicting interpretations:

First Interpretation: $31,566.52 IS NOT a sum certain of calculated arrears.[7]

Second Interpretation: $31,566.52 IS a sum certain of calculated arrears.[8]

This Court concluded that the First Interpretation was correct. Fundamentally,

this Court concluded that the $31,566.52 figure is the result of adding the fifteen

Thousand Two Hundred Thirty-Five Dollar and Fifty-Two Cent ($15,235.52) figure

specified as "a lump sum payment" that Father is to make "towards anticipated

---

[7] This Court's review of Ex. D-8 indicates that, Domestic Relations implemented the March 17, 2015 Order on March 20, 2015 in accordance with the First Interpretation. Domestic Relations re-calculated the arrears balance in accordance with the retroactive application of support amounts specified on pages one (1) and two (2) the Order. (*See 3/17/15 Order of Support,* at 1-2). The re-calculated arrearage total was NOT Fifteen Thousand Two Hundred Thirty-Five Dollars and Fifty-Two Cents ($15,235.52) (the lump sum payment of anticipated arrears ordered by Judge Coll on March 17, 2015 to be paid by Father to Mother). *See 3/17/15 Order of Support,* at 5 ¶ 4; *See also Ex. D-8.* Instead, review of Ex. D-8 indicates that there was NO arrears balance, but that Father in fact had a credit in the amount of One Thousand Seven Hundred Fifty-Four Dollars and Eleven Cents ($1,754.11). *See N.T. 1/9/17,* at 47 ¶ 11-15; *see also Ex. D-8.*

[8] On October 21-22, 2015, Domestic Relations implemented the Second Interpretation based upon a phone call made from an unidentified individual. In accordance with the Second Interpretation, Domestic Relations added One Thousand Seven Hundred Fifty Four Dollars and Eleven Cents ($1,754.11), which essentially offset the credit that was calculated in accordance with the First Interpretation. *See N.T. 1/9/17,* at 62 ¶ 12-23. Another adjustment was made to add Fifteen Thousand Two Hundred Thirty Five Dollars and Fifty-Two Cents ($15,235.52) on to Father's arrears balance. Because the tuition amount of Sixteen Thousand Three Hundred Thirty One Dollars ($16,331.00) was already added to Father's arrears on March 20, 2015, the addition of the $15,235.52 essentially set Father's total arrearage at $31,566.52 in accordance with the handwritten provision contained in Judge Coll's March 17, 2015 Order. *Id.* at 63 ¶ 17-23.

arrears," according to the provision on page 5, paragraph 4, and the Sixteen Thousand Three Hundred Thirty-One Dollar ($16,331.00) figure specified as tuition payments "added to the arrears owed to Mother," according to the provision on page 4, paragraph 1. (*See 3/17/15 Order of Support,* at 5 ¶ 4; 4 ¶ 1).

This Court concluded that the $15,235.52 figure was NOT intended to be a sum certain of calculated arrears for the years of 2012, 2013, and 2014. Because the Fifteen Thousand Two Hundred Thirty-Five Dollar and Fifty-Two Cent ($15,235.52) figure is not a sum certain of calculated arrears, the resulting Thirty One Thousand Five Hundred Sixty-Six Dollars and Fifty-Two Cents ($31,566.52), derived from its addition to the tuition amount, is also not a sum certain of calculated arrears. This Court's reasoning is as follows:

First, the Superior Court has already provided an interpretation of the Fifteen Thousand Two Hundred Thirty-Five Dollar and Fifty-Two Cent ($15,235.52) figure. As stated herein, the 2015 Support Order was subject to an appeal filed by Mother and a cross appeal filed by Father in the Superior Court of Pennsylvania. See *S.T.M. v. J.N,* 2016 WL 1604389 (Pa. Super. 2016). In her appeal Mother contended that this Court erred by determining that the "total outstanding child support owed for the years 2012, 2013, and 2014 is $15,235.52." *Id.* at 18 (*citing* Mother's Brief, at 17). The Superior Court held that Fifteen Thousand Two Hundred Thirty-Five Dollars and Fifty-Two Cents ($15,235.52) was not a sum

certain of calculated arrears for 2012, 2013, and 2014. In support of its holding,

the Superior Court stated:

> We conclude Mother misconstrues the trial court's order...the Order
> provides, "[d]ue to the retroactive nature of the within Order, as well
> as the anticipated arrears owed to [Mother], as a result, within Thirty
> (30) days, [Father] shall make a lump sum payment towards arrears in
> the amount of $15,235.52..."
>
> Thus, contrary to Mother's assertion, the trial court did not "determin[e]
> that the actual amount of child support due and owing to [Mother] is
> only $15,235.52..." Rather the trial court determined that
> $15,235.52 was the amount to be payable as an initial lump sum.
> Accordingly, we conclude Mother's claim is based on a misreading of
> the order and is therefore meritless.

*S.T.M. v. J.N.*, 2016 WL 1604389, 18-19 (Pa. Super. 2016).

Secondly, in support of this Court's interpretation as well as that of the

Superior Court, this Court notes the language of the 2015 Support Order itself:

> Due to the **retroactive nature** of the within Order, as well as the
> **anticipated arrears** owed to [Mother] as a result, within thirty
> (30) days, [Father] shall make a lump sum payment towards the
> arrears in the amount of $15,235.52.

*(3/17/15 Order of Support,* at 5 ¶ 4)(Emphasis Added).

As gleaned from the plain language of the 2015 Support Order, Fifteen

Thousand Two Hundred Thirty-Five Dollars and Fifty-Two Cents ($15,235.52) is not

a sum certain of calculated arrears. It is "a lump sum payment towards the arrears"

that Father was to pay. The purpose of the Fifteen Thousand Two Hundred Thirty-

Five Dollar and Fifty-Two Cent ($15,235.52) lump sum payment was due to the

retroactive nature of the 2015 Support Order and the anticipated arrears resulting therefrom.

Thirdly, in accordance with the retroactivity of the 2015 Support Order, it is the task of Domestic Relations to re-calculate the arrears to account for Father's prior payments made in relation to the retroactively applied support obligation. *See Miller v. Nelson*, 2016 WL 1604389, 19, n.12 (Pa. Super. 2016); (*citing, 3/17/15 Order of Support* at 2)[9]; *See also N.T. 1/9/17*, at 18-21. This Court relies on the computer program utilized by Domestic Relations to accomplish this task and make the re-calculations accurately and efficiently. *See N.T. 1/9/17*, at 18-23. In accordance with this understanding, this Court noted that pages one (1) and two (2) of the 2015 Support Order diligently provided for a support obligation that was bifurcated into four (4) parts, and applied retroactively to January 1, 2012. The 2015 Support Order provided for four (4) specific dollar amounts of monthly support correspondent to the four (4) different time periods provided in the Order. *See 3/17/15 Order of Support*, at 1-2). This Court concluded, as did the Superior Court, that Judge Coll would not have issued an Order that was bifurcated into four (4) parts, with a specific support amount correspondent to each of four (4) time periods, if he intended for the arrears to be

---

[9] This Court notes that in footnote 12 of its Opinion, the Superior Court specifically stated that "the actual arrearage amount is determinable by the Domestic Relations Office (DRO) based on the order, the status of any previous arrears at the time of the order, and the subsequent history of payments through the Pennsylvania Automated Child Support Enforcement System. Such arrears will be subject to paragraph 4.[d.] on page 2 of the child support modification order." *S.T.M. v. J.N.* 2016 WL 1604389, 19, n.12 (Pa. Super. 2016).

set at Fifteen Thousand Two Hundred Thirty-Five Dollars and Fifty-Two Cents

($15,235.52) or any other sum certain. This Court concluded that the intention of the

2015 Support Order was to provide for the arrears to be re-calculated by

Domestic Relations based on the support amounts set forth in the Order, the status

of any previous arrears at the time of the Order, and history of payments made by

Father under the terms of any previous support obligation. (*See Miller v. Nelson,*

2016 WL 1604389, 19, n.12 (Pa. Super. 2016).

Because this Court concluded that the Fifteen Thousand Two Hundred Thirty-

Five Dollar and Fifty-Two Cent ($15,235.52) figure was not intended to be a sum

certain of calculated arrears owed to Mother, the handwritten reference to the

amount of Thirty-One Thousand Five Hundred Sixty-Six Dollars and Fifty-Two Cents

($31,566.52) is also not a sum certain of calculated arrears owed to Mother.[10]

---

[10] In accordance with its finding that the $31,566.52 was **not** intended to be a sum certain of total arrears owed as of March 17, 2015, this Court's Support Order of March 21, 2017 provided for Domestic Relations to **CREDIT** Father in the amount of Fifteen Thousand Two Hundred Thirty-Five Dollars and Fifty Two Cents ($15,235.52). In addition, Domestic Relations was ordered to credit Father another One thousand Seven Hundred Fifty-Four Dollars and Eleven Cents ($1,754.11). A total of Sixteen Thousand Nine Hundred Eighty-Nine Dollars and Sixty-Three Cents ($16,989.63) was ordered to be credited to Father's arrears. This amount was credited in order to reverse the added arrears applied by Domestic Relations on October 21 and October 22, 2015, in accordance with its second interpretation of Judge Coll's March 17, 2015 Order, an interpretation which this Court found to be erroneous. (*See 3/21/17 Support Order,* at ¶ 140).

## DISCUSSION – FATHER'S CROSS APPEAL

Father raises the following issue in his cross-appeal:

1. **Did this Court err in its determination that Father is responsible for contribution to the tuition for the parties' child A.N. to attend The Country Day School of the Sacred Heart?**

Father alleges, in his Concise Statement of Matters Complained of on

Appeal, that this Court erred in its determination that Father should be responsible

for contribution to the tuition payments in connection with the child A.N's enrollment

in the Country Day School of the Sacred Heart ("Sacred Heart"). Specifically,

Father's Statement of Matters Complained of on Cross-Appeal requests review of

one (1) issue, stated by Father as follows:

> Whether the Trial Court erred and/or abused its discretion by modifying Father's child support obligation to include the tuition of a new and significantly higher private school, where the same was not reasonable as (1) Father was already paying for private school tuition for the school that the child consistently attended since kindergarten and was able to continue attending; and/or (2) the cost of the new school's tuition was not reasonable in light of the parties' income as well as Father's significant decrease in income; and/or (3) Mother was seeking the change to the new school but failed to met (sic) her burden to show a benefit to the child; and/or (4) Mother unilaterally enrolled the child over Father's objection and in violation of joint legal custody.

*Mother's Concise Statement of Matters Complained of On Appeal*, at
¶ 1.

This Court notes the appellate standard of review with respect to child

support matters:

When evaluating a support order, [the Superior Court] may only reverse the trial court's determination where the order cannot be sustained on any valid ground. [The Superior Court] will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, [the Superior Court] note[s] that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Gibbons v. Kugle*, 908 A.2d 916 (Pa. Super. 2006); *(citing, Samii v. Samii*, 847 A.2d 691, 694 (Pa. Super. 2004)).

The support guidelines allow the court to include private school tuition in the support amount if the court determines that the need for private school is a reasonable one. *See Pa. R.C.P. No. 1910.16-6(d)*. *See also Fitzgerald v. Kempf*, 805 A.2d 529 (Pa. Super. 2002). If private school tuition is found to be a reasonable need of a child, a support award may be adjusted so that each parent provides a reasonable share of the tuition. *Fitzpatrick v. Fitzpatrick*, 603 A.2d 633 (Pa. Super. 1992).

Whether a private school education is a reasonable need of the child and a reasonable expectation and expense of the parents is determined by deciding if private schooling 1) will benefit the child and if 2) private schooling is consistent with the family's standard of living and station in life before the separation. *Knapp v. Knapp*, 758 A.2d 1205 (Pa. Super. 2000).

Evidence of what is reasonable may include whether, prior to their divorce or separation, the parties sent their other children to private school under circumstances similar to those facing the child under consideration. *Gibbons v. Kugle*, 908 A.2d 916 (Pa. Super. 2006).

There is no dispute between the parties with respect to a reasonable need for private school education. Furthermore, it is clear that both parties value private school education as both parties are Ivy League educated and both testified that the quality of their children's education is very important to them. The parties' dispute concerns the specific choice of school for A.N., and Father's allegation that Mother unilaterally made that choice, at a considerably higher tuition expense, without Father's input or consent.

This Court concluded, based on the evidence and testimony presented at trial, that A.N.'s enrollment in the Country Day School of the Sacred Heart ("Sacred Heart"), as opposed to continued attendance at The City School, inured to the benefit of the child and that it was a reasonable expense, considering the household income available to the parties, Father's earnings, and station in life.

Specifically, with respect to the benefit to the child, the scope of evidence with which to make a determination consisted mainly, if not entirely, on the testimony of the parties, as well as circumstantial evidence. Testimony

elicited at trial indicated that The City School's high school program was relatively new. Furthermore, the facilities at The City School's high school were not acceptable to these parties, both of whom testified that the quality of their children's education is of great importance. *See Ex. D-3; See also N.T. 1/4/17*, at 57, 156. With regard to the adequacy of The City School's high school program, this Court found that Father's testimony was vague and contradictory. Father seemed to focus simply on the fact that A.N. had been attending The City School since Kindergarten as the reason for why she should continue to attend school there. (*N.T. 1/4/17*, at 43 ¶ 6-18). For an educated man seemingly focused on attaining the best education possible for his children, Father's testimony lacked any substantive knowledge concerning the quality of education for The City School's high school program.

Mother's testimony with regard to the quality of the City School's high school program was more direct, specific, and articulate. Mother testified that the parties decided that The City School's high school program was "substandard." *N.T. 1/4/17*, at 123. Mother testified that The City School's high school is located in the basement of a church in Center City, and the entire high school, 9th through 12th grade, consisted of approximately forty (40) children. *Id.* at 122-123. Mother further testified:

> [T]he resources that [The City School] has and the exposure and the things that they'll be able to do to prepare for college are significantly limited. There are no outdoor grounds. There would be no

ability to play sports. There'd be no ability to socialize, no ability for prom.

*Id.* at 123.

Mother's testimony with respect to the parties' joint recognition that the City School's high school program does not reach an acceptable standard, is further supported by the following circumstantial evidence:

1.      The parties' oldest child, was removed from The City School after completion of his eighth grade year. He did not attend The City School for high school, but instead attended another private school, The Church Farm School.[11] *See N.T. 1/4/17*, at 86-87; 123.

2.      Father was aware of A.N.'s participation in a high school entrance exam for Notre Dame Academy. *N.T. 1/4/17*, at 57-60. After A.N. took the exam, Father himself then purchased a book for A.N., which was titled *Catholic High School Entrance Exams. Id.* at 58-59; 120-122.

3.      Although email correspondence from Father's counsel to Mother's counsel in October of 2015 indicated that he opposed any change in A.N.'s school, Father himself sent an email to Mother

---

[11] Father testified that the Church Farm School was cheaper due to scholarships that the parties' oldest child received. However, this Court found that his enrollment in Church Farm School was also supportive of Mother's testimony that these parties both recognized that the City School's high school program was not acceptable for him, and thus looked at other schools in which to send him.

on July 6, 2016, in which he indicated that he was "not opposed" to sending A.N. to another school but that the "quality of the institution and the costs are important" to him. *See Ex. D-3.*

This Court notes that the Superior Court has held an obligor responsible for private school tuition, even in light of the obligor's "disagreement" with the obligee's decision to send a child to private school. *See Murphy v. McDermott,* 979 A.2d 373 (Pa. Super. 2009). In *Murphy,* the Superior Court affirmed the trial court's order for a father to contribute toward the cost of a child's private school tuition where the child would benefit from a private school education and where such education was consistent with the family's standard of living. The trial court reasoned that the father could "easily and adequately" afford to pay for the contribution, and that in light of the father's station in life and assets, it would be in the child's best interest to continue his private school education. *Id.* at 375.

Father's assertion that he should not be responsible for Sacred Heart tuition because he "did not agree" to the A.N.'s enrollment in Sacred Heart is without merit. For this Court to hold that Father should not responsible for contribution to Sacred Heart's tuition, **solely** because he "did not agree" to send A.N. to Sacred Heart, would be contrary to the holding set forth in *Murphy.* However, in its Findings of Fact and Conclusions of Law, filed

contemporaneously with its March 21, 2017 Order, this Court addressed

Father's allegation that Mother enrolled A.N. in Sacred Heart without Father's

consent. *See 3/21/17 Support Order,* at ¶ 99-122.

Specifically, this Court heard considerable testimony and evidence

presented with respect to the issue of whether Mother had informed Father of

her intent to remove A.N. from The City School and enroll her in Sacred

Heart, and whether Father, who is has shared legal custody of the children,

consented to Mother's decision to enroll A.N. in Sacred Heart. Father

presented email correspondence between his counsel and Mother's counsel

from October of 2015, which stated that Father was opposed to any change

in A.N.'s school for the 2016-17 school year. *See Ex. D-2.* The matter

evidently was not discussed again until December of 2015, during a parent

teacher conference, wherein Mother raised the issue of changing A.N's school

due to the fact that there was no school bus transportation from Mother's

house to The City School's high school location. *N.T. 1/4/17,* at 55-56; *Ex. D-3.*

Mother testified that, between October of 2015, when Father's counsel

sent an email to Mother's counsel opposing a change in A.N.'s school, and

June of 2016, there were numerous verbal discussions between the parties in

which the parties jointly recognized the need to change A.N.'s school due to

concerns over the quality of education at The City School, and were in

agreement to allow the child to test for admission to prospective high schools. *See N.T. 1/9/17*, at 119-123. Although there was no evidence of any written communications between the parties from October of 2015 to June of 2016, this Court found that circumstantial evidence supported and lent credibility to Mother's testimony that Father consented to A.N.'s enrollment in Sacred Heart:

1. Following the parent teacher conference, in December of 2015, A.N. visited Father. At that point Father knew that A.N. had taken an entrance exam to Notre Dame Academy and that Mother was concerned over transportation issues with respect to The City School's high school location. Following A.N.'s visit with Father in December of 2015, Father sent A.N. a book titled *Catholic High School Entrance Exams. N.T. 1/4/17*, at 58; 120-122; 158-159.

2. As stated above, Mother testified credibly with respect to the parties joint recognition that it would not be in A.N.'s best interest to attend The City School for high school, due to the substandard quality of the high school program. *Id.* at 123. This joint recognition, as testified by Mother, is supported by the fact that the parties' oldest child did not attend The City School for high school. *Id.* at 86-87; 123.

3. In his email of July 6, 2016, Father stated that he is "not opposed" to sending A.N. to another school, although the quality of school and the costs are important to him. *See Ex. D-3*

4. Mother's testimony that, subsequent to the email correspondence of July 6, 2017, Father agreed to A.N.'s attendance at Sacred Heart in "July or August" is substantiated by the fact that Father did not file any pleading in the appropriate forum to enforce his legal custody rights which he now alleges were violated by Mother. *See N.T. 1/4/17,* at 126; 160-161.

Furthermore, it is unclear why Father waited over six (6) months and did not participate in selection of schools for the upcoming school year when he knew in October of 2015 that Mother wanted to change the child's school due to transportation concerns, as well as concerns over the inadequacy of the high school facilities at The City School. At trial, Father focused on his legal custody rights which he insisted had been violated by Mother's unilateral decision to enroll A.N. in a new school. He seemed to construe his legal custody rights as some sort of retained veto power, exercisable at any time, over Mother's actions with respect to decisions that need to be made to further A.N.'s education. This Court found that Father's focus on his legal custody rights was misplaced in light of the fact that he did not exercise his legal custody duties commensurate with those rights. He did not show any

evidence that he offered any suggestions or alternative options with respect to the child's future schooling. He showed no evidence that he attempted to participate in addressing Mother's concerns with regard to transportation or her concerns regarding the continued quality of A.N.'s education.

Father's expressed concerns and main reasoning for opposing A.N.'s enrollment in Sacred Heart were based upon financial concerns as opposed to academic. *N.T. 1/4/17*, at 43-44. Because Father's expressed financial concerns are relevant to the determination as to whether the costs associated with A.N.'s enrollment in Sacred Heart are reasonable, in light of Father's assets, earnings, and station in life, this Court addressed this issue in the Findings of Fact and Conclusions of Law, filed contemporaneously with the March 21, 2017 Support Order. *See 3/21/17 Support Order*, at ¶ 99-122).

Specifically, this Court found that Father's current earnings amounted to Two Hundred Ten Thousand Dollars ($210,000.00) per year. *Id.* at ¶ 83. This Court calculated Father's net monthly income for the purposes of child support at Eleven Thousand Five Hundred Forty-One Dollars and Forty Cents ($11,541.40). *Id.* At Father's current net monthly income, his base child support was calculated by this Court to be One thousand Nine Hundred Fifty-Three Dollars and Twelve Cents ($1,953.12) per month. *Id.* at ¶ 98a. Contribution towards total tuition (The City School for J.N. plus Sacred Heart

for A.N.) was calculated to be One Thousand Seven Hundred Sixty-Five Dollars and Thirty-Nine Cents ($1,765.39). *Id.* at ¶ 98c. Father was given credit for health insurance coverage that he provides for the children. *Id.* at ¶ 98b. Credit given to Father was calculated at Thirty-Five Dollars and Sixty Cents per month ($35.60). *Id.* Therefore, including tuition Father's total monthly support obligation was calculated by this Court to be Three Thousand Six Hundred Eighty-Two Dollars and Ninety-One Cents ($3,682.91) per month. *Id.* at ¶ 137f. This monthly amount (the combination of base support plus tuition for both children) is equivalent to approximately thirty-two percent (32%) of Father's net monthly income. In light of this fact, as well as the determined benefit of Sacred Heart for the child, in accordance with the case law cited herein, this Court found that A.N.'s Sacred Heart tuition was a reasonable cost.

## CONCLUSION

For the above stated reasons this Court's Support Order dated March 21, 2017 should be affirmed.

BY THE COURT:

_____
Dominic F. Pileggi, J.

NOTICE PURSUANT TO RULE 236
MAILED ___6/22/17___ ✗A
DOMESTIC RELATIONS